IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ISHYNIQUE MCCOY, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 18-4079 |
| | : | |
| CWORK SOLUTIONS, LP, et al., | : | |
| Defendants. | : | |

April 28, 2022                                                                      Anita B. Brody, J.

## MEMORANDUM

On July 7, 2016, Plaintiff Ishynique McCoy's refurbished Apple iPhone 6 Plus burst into flames and injured McCoy. As a result, on August 20, 2018, McCoy filed a complaint against Defendants T-Mobile Store, T-Mobile USA, Inc. ("T-Mobile USA"), Assurant, Inc. ("Assurant"), Asurion, and Apple, Inc ("Apple"). On December 10, 2019, the complaint was amended to substitute Defendant C-Work Solutions, LP ("C-Work") for Defendant Assurant. On January 22, 2020, C-Work filed a third-party complaint against Third-Party Defendant ATC Logistics & Electronics, Inc. d/b/a GENCO Technology Solutions d/b/a Fedex Supply Chain ("ATC") for indemnification and contribution.

By the close of discovery on December 18, 2021, T-Mobile Store, Apple, Inc., Asurion, and Assurant, Inc. had been dismissed from the action. The Court ordered the remaining parties (McCoy, T-Mobile USA, C-Work, and ATC) to file dispositive motions on or before January 28, 2022. Both C-Work and ATC filed timely motions for summary judgment. On March 18, 2022, the Court granted both motions, leaving T-Mobile USA as the only remaining defendant in the litigation. McCoy moves for

1

reconsideration of the March 18, 2022 Order granting summary judgment in favor of C-Work and ATC. In the alternative, McCoy moves for leave to amend the complaint. I exercise diversity jurisdiction over the action pursuant to 28 U.S.C. § 1332.[1] I will deny McCoy's motion.

## I. BACKGROUND

### A. Factual Background

In 2015, McCoy received an Apple iPhone 6 Plus ("iPhone") that was purchased from T-Mobile USA. The iPhone was insured by an insurance policy issued by C-Work that covered loss and repairs.

In mid-February 2016, McCoy's iPhone was stolen. Pursuant to the insurance policy, C-Work provided McCoy with a replacement iPhone 6 Plus ("replacement iPhone"). On July 17, 2016, the replacement iPhone exploded and injured McCoy.

Unbeknownst to McCoy, the replacement iPhone had been refurbished before she received it. Pursuant to a Repair Services Agreement, C-Work contracted with ATC to provide services related to testing, repairing, and refurbishing cell phones. On December 21, 2015, C-Work shipped the replacement iPhone to ATC. ATC refurbished the replacement iPhone and returned it to C-Work who then shipped it to McCoy on February 25, 2016.

---

[1] A federal court siting in diversity must apply the substantive law of the state in which it sits, *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938), including its choice of law rules, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Here, a choice of law analysis is not necessary because the parties appear to agree that Pennsylvania law applies as they exclusively cite to Pennsylvania law. *Zicherman v. Korean Air Lines Co., Ltd.*, 516 U.S. 217, 228-29 (1996) (stating that a choice of law analysis was not required because the parties agreed upon the law to be applied); *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 61 (2d Cir. 2004) ("Here, the parties' briefs assume that New York law controls this issue, and such 'implied consent ... is sufficient to establish choice of law.'" (quoting *Krumme v. WestPoint Stevens, Inc.*, 238 F.3d 133, 138 (2d Cir.2000))). Thus, Pennsylvania law applies to the claims.

Both McCoy and ATC obtained experts to opine on what caused the replacement iPhone to explode. McCoy provided an expert report from Jeffrey M. Kobilka who concluded:

> [ATC] performed the refurbishment of the incident phone including modification/replacement of the screen, back cover, battery, front camera, and charging port. To conduct this repair many internal screws would necessarily be removed. A proper repair would include replacing them to the correct location, securing the assemblies. The remains of the phone indicate that this did not occur, as several screws are documented to be missing and one remained loose within the phone. The only reasonable conclusion is that [ATC] failed to install all of the internal screws in the proper locations leaving a screw in between the battery and mid plate. The screw was pressing upon the battery cell and at the time of the incident the screw penetrated the battery cell casing and caused the cell to enter thermal runaway. [ATC] performed a defective refurbishment of the incident iPhone and this was a cause of the incident.

C-Work Summ. J. Mot., Ex. B at 17. ATC provided a conflicting expert report from Samuel G. Sudler III who concluded:

> [I]t is the opinion of S-E-A that the subject battery cell located in the subject Apple iPhone 6 Plus cellular phone was subjected to external damage, unrelated to work performed on the Apple iPhone 6 Plus cellular phone and battery cell, that caused an electrical failure with the battery cell resulting in the injury to Ms. McCoy.

C-Work Summ. J. Mot., Ex. C at 5. Neither expert identified C-Work as a party responsible for the combustion of the replacement iPhone.

### B. Procedural Background

On December 18, 2021, the parties concluded discovery. In January 2022, C-Work and ATC filed motions for summary judgment. C-Work moved for summary judgment on the basis that McCoy failed to produce any evidence that C-Work was negligent. ATC moved for summary judgment on the basis that if C-Work was not

liable to McCoy, then ATC could not be held liable in the third-party complaint to C-Work for indemnification and contribution.[2]

McCoy did not respond to C-Work's argument that McCoy had not presented any evidence to establish her negligence claim against C-Work. Instead, McCoy argued for denial of C-Work's motion on the basis that McCoy had presented sufficient evidence that C-Work was the "seller" of the replacement iPhone and thus was strictly liable for McCoy's injuries that resulted from the exploding replacement iPhone under section 402A of the Restatement (Second) of Torts.[3] McCoy also argued that ATC's motion for summary judgment should be denied because C-Work had a viable strict liability claim against C-Work for which ATC could be held secondarily liable.

C-Work replied that it was not the "seller" of the replacement iPhone and could not be held strictly liable under section 402A. ATC replied that McCoy had only brought a claim for negligence against C-Work. ATC argued that C-Work could not be held liable to McCoy as a "seller" under section 402A because McCoy had not brought a

---

[2] Alternatively, ATC argued the evidence was insufficient to support C-Work's third-party claims.

[3] Section 402A provides:

> One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> (a) the seller is engaged in the business of selling such a product, and
>
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Restatement (Second) of Torts § 402A(1). Pennsylvania has adopted section 402A of the Restatement (Second) of Torts. *Webb v. Zern*, 220 A.2d 853, 854 (Pa. 1996); *see also Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 399 (Pa. 2014) ("Pennsylvania remains a Second Restatement jurisdiction" in regard to section 402A).

4

claim for strict liability against C-Work. Because McCoy had no viable claim against C-Work, ATC further argued that C-Work had no viable claim for secondary liability against ATC. McCoy did not respond to C-Work's or ATC's arguments.

On March 18, 2022, the Court entered an Order and Memorandum granting both motions for summary judgment. After reviewing the complaint, the Court agreed with ATC that McCoy had only brought a claim of negligence against C-Work and had not brought a claim for strict liability against C-Work. The Court held that McCoy could neither succeed on a strict liability theory against C-Work nor rely on section 402A to prove her negligence claim because negligence and strict liability are two separate and distinct causes of action. *See* Mem. 6, ECF No. 83 ("[T]he strict liability theory [i]s a distinct cause of action in tort." (quoting *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 382 (Pa. 2014)). The Court granted C-Work's motion for summary judgment because McCoy could not establish that C-Work acted negligently and breached a duty of care owed to McCoy. Because C-Work could not be held liable for negligence to McCoy, the Court held that ATC could not be held derivatively liable to C-Work to contribute or indemnify C-Work for McCoy's negligence. Therefore, the Court granted ATC's motion for summary judgment.

On March 21, 2022, the Court scheduled the trial against T-Mobile USA, the sole remaining Defendant. On March 28, 2022, McCoy filed the pending motion for reconsideration or, in the alternative, motion for leave to amend the complaint.

## II. RECONSIDERATION

McCoy brings a motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e) and argues that the Court made an error of law in granting summary

judgment to C-Work and ATC.  "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985).  "A motion for reconsideration may not be used as a means to reargue unsuccessful theories, or argue new facts or issues that were not presented to the court in the context of the matter previously decided." *Lusick v. City of Phila.*, No. 12-5150, 2013 WL 1187064, at *1 (E.D. Pa. Mar. 21, 2013).  In order to prevail on a motion for reconsideration, a party seeking reconsideration must demonstrate one of the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

McCoy contends that the Court made a clear error of law when it narrowly interpreted the complaint to only include a negligence claim against C-Work rather than interpreting it to also include a strict liability claim against C-Work.  Additionally, McCoy contends that the Court committed clear legal error by granting summary judgment on this basis without affording McCoy the opportunity to amend the complaint when neither ATC nor C-Work raised the argument that McCoy did not bring a claim for strict liability.  The motion for reconsideration will be denied because the Court did not commit a clear error of law.

Despite McCoy's contention, McCoy was informed of the argument that she had not brought a claim for strict liability during summary judgment briefing.  In the reply brief, ATC argued that "[t]he only claim sounding in strict liability was asserted against

6

the dismissed manufacturer, Apple, Inc. . . . The claim asserted against C-Work . . . sounds in negligence." ATC Reply 2, ECF No. 82. Additionally, ATC stated, "Plaintiff's argument centers on her contention that C-Work is strictly liable as a 'supplier' of a defective product. But again, the claim asserted against C-Work sounds in negligence." *Id.* McCoy failed to respond to the argument that she did not bring a claim for strict liability against C-Work and failed to request leave to amend the complaint prior to the Court's ruling on the motions for summary judgment. The Court did not commit legal error by failing to give McCoy an opportunity to respond to the deficiency in the complaint. Rather, McCoy erred when she failed to respond during summary judgment briefing to the argument that she had not brought a claim for strict liability.

Additionally, the Court did not commit clear legal error by failing to interpret the complaint to include a strict liability claim against C-Work. Although the complaint is titled "Civil Action – Products Liability Action," it is explicit from the complaint that McCoy brings a strict liability claim solely against Apple. The complaint contains the following counts:

- COUNT I – NEGLIGENCE
  PLAINTIFF v. T-MOBILE STORE

- COUNT II – NEGIGENCE
  PLAINTIFF v. T-MOBILE USA, INC.

- COUNT III – NEGLIGENCE
  PLAINTIFF v. C-WORK SOLUTIONS, LP[4]

- COUNT IV – NEGLIGENCE
  PLAINTIFF v. ASURION

---

[4] This Count was originally brought against Assurant, Inc. On December 10, 2019, however, the Complaint was amended to substitute Defendant C-Work for Defendant Assurant. *See* Order, ECF No. 33.

- COUNT V – NEGLIGENCE
  PLAINTIFF v. APPLE, INC.

- COUNT VI – STRICT LIABILITY
  PLAINTIFF v. APPLE, INC.

Compl. Each negligence count in the complaint, including Count III –the only claim for relief against C-Work, begins with the statement, "The aforesaid accident was caused by the negligence, carelessness and recklessness of Defendant," and then lists in subparagraphs the many "failing[s]" of Defendant. Compl. ¶¶ 15, 18, 21, 24, 27. None of the negligence counts mentions strict liability or section 402A of the Restatement (Second) of Torts.

McCoy argues that the court should have inferred a strict liability claim under section 402A because subparagraph (k) alleges that "the accident was caused by the negligence, carelessness and recklessness" of C-Work by "failing to provide every element necessary to make this product safe for its reasonably foreseeable uses and misuses." Compl. ¶ 21(k). Because the language of subparagraph (k) mirrors the language used in a products liability jury instruction, *see Tincher*, 108 A.3d at 390, McCoy contends that COUNT III included a strict liability claim under section 402A. The language in subparagraph (k), however, pertains to a defective design jury instruction and does not relate in any manner to section 402A, which establishes a claim for strict liability for a seller of a defective product. Additionally, the preface to subparagraph (k), that "the accident was caused by the negligence, carelessness and recklessness" of C-Work, further supports the conclusion that COUNT III is solely a negligence claim against C-Work.

8

Unlike the negligence counts, Count VI explicitly alleges: "The subject iPhone was unreasonably dangerous and defective pursuant to the doctrines of strict liability as established by Pennsylvania Law and Section 402A of the Restatement (Second) of Torts." Compl. ¶ 32. "While 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers,' the plaintiff's complaint in this case, drafted by an experienced attorney, is not entitled to such a liberal construction." *Bingaman v. Bingaman*, No. 4:07-CV-2352, 2009 WL 2424641, at *3 (M.D. Pa. Aug. 5, 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). The complaint establishes that McCoy's counsel knew the difference between a negligence claim and a strict liability claim. More importantly, it establishes that McCoy only brought a strict liability claim under section 402A against Apple. "Pleadings must be construed so as to do justice," Fed. R. Civ. P. 8(e), which requires judging the sufficiency of a pleading on a context-dependent basis. *Garrett v. Wexford Health*, 938 F.3d 69, 93 (3d Cir. 2019). In this case, based on the entire context of the complaint, justice requires interpreting the complaint to solely include a strict liability claim against Apple.

C-Work moved for summary judgment to dismiss the only claim against it—a negligence claim. The Court did not commit any error of law by granting the motions for summary judgment as it correctly determined that McCoy's complaint did not include a claim of strict liability against C-Work.

**III. LEAVE TO AMEND**

In the alternative, McCoy seeks leave to amend the complaint to add strict liability and breach of warranty claims against T-Mobile USA and C-Work.[5]  *See* Pl.'s Mot. Ex. 5, ECF No. 87.  Rule 15 Federal Rules of Civil Procedure provides that a "court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Due to the liberal pleading philosophy espoused in the Rules, delay alone is not a valid basis for a district court to deny leave to amend.  *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008).  "A district court may deny leave to amend a complaint if a plaintiff's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the opposing party."[6]  *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272–73 (3d Cir. 2001).  In this case, I will deny the motion for leave to amend because of undue delay.[7]

"Delay becomes "undue," and thereby creates grounds for the district court to refuse leave, when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend."  *Bjorgung*, 550 F.3d at 266.  Courts have recognized that an unwarranted burden is placed on the district court when a party delays making a motion for leave to amend until after summary judgment has been granted.  *Cureton*, 252 F.3d at 273 ("When a party delays making a motion to amend

---

[5] Additionally, the proposed amended complaint includes the same negligence claims against T-Mobile USA and C-Work that were alleged in the original complaint.  Of course, McCoy cannot again bring a negligence claim against C-Work as the Court has already granted summary judgment on this claim.  *See* Order, ECF No. 84.

[6] A district court may also deny a motion for leave to amend on the basis that an amendment fails to state a cause of action and is futile.  *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).  I will deny the motion for leave to amend because of undue delay.  Thus, it is unnecessary to address whether amendment would also be futile.

[7] Although amendment is potentially prejudicial to the opposing party, it is unnecessary to reach this issue.

until after summary judgment has been granted to the adverse party, other courts have recognized that the interests in judicial economy and finality of litigation may become particularly compelling.") Additionally, when a party waits "long after the close of discovery" to seek leave to amend, this delay also places an unwarranted burden on the court. *Bjorgung*, 550 F.3d at 267. Courts have recognized that a party has had previous opportunities to amend when the party provides no reasonable explanation for the delay in seeking amendment despite having had notice of the deficiency in the complaint. *Bjorgung*, 550 F.3d at 266-67; *Cureton*, 252 F.3d at 274.

In *Bjorgung*, the defendants informed the plaintiff three- and one-half years before the plaintiff sought leave to amend the complaint that he was suing the wrong entities. 550 F.3d at 266. The plaintiff waited until after the defendants had filed a motion for summary to seek leave to amend. *Id.* at 267. The Third Circuit found that the plaintiff had previous opportunities to amend because he had known of the problem with his complaint but did nothing to address the problem prior to the defendants' filing of a motion for summary judgment. *Id.* The Third Circuit also found that the plaintiff had placed "a considerable potential burden" on the court by waiting to seek amendment when the court was on "the brink of ruling dispositively on the entire suit." *Id.* If the court were to allow amendment, the Third Circuit surmised that it would be burdened with "a substantial period of additional discovery and motions." The Third Circuit affirmed the district court's denial of leave to amend based on undue delay because the plaintiff did not take advantage of previous opportunities to amend, he lacked a persuasive explanation for the delay, and amendment would burden the court. *Id.*

11

In *Cureton*, the Third Circuit affirmed a district court's finding of undue delay where a plaintiff waited until after the court had ruled on a dispositive motion to seek leave to amend. 252 F.3d at 273-4. The district court found that the plaintiff had not offered a reasonable explanation for the delay and concluded that the delay was undue for the following reasons:

> (1) the motion was filed three years after the complaint was filed; (2) the factual information on which the proposed amendment relied was known almost two-and-a-half years before plaintiffs sought leave to amend; (3) judicial efficiency would be damaged by trying claims seriatim; and (4) the interest in the finality of the proceedings would be compromised by amendment.

*Id.* (footnote omitted).

McCoy initiated this action on August 20, 2018, and substituted C-Work as a Defendant on December 10, 2019. She then waited more than two additional years, until March 28, 2022, to seek leave to amend the complaint. By the time McCoy finally filed a motion for leave to amend, discovery had already concluded on December 18, 2021. Additionally, the Court had already granted motions for summary judgment and dismissed C-Work and ATC from suit and scheduled McCoy's trial against T-Mobile USA, the sole remaining Defendant.

Similar to *Cureton*, McCoy's delay in seeking leave to amend places an undue burden on the Court because amendment at this late stage compromises the interest in the finality of the proceedings, including the dismissals of C-Work and ATC, and impairs judicial efficiency by forcing the Court to address claims in seriatim. Furthermore, as recognized in *Bjorgung*, allowing amendment would also place an additional unwarranted burden on the Court because it would inevitably lead to a

substantial period of additional discovery and motions, especially on the breach of warranty claims that have never been raised against any party in the litigation.

McCoy offers no explanation for the multi-year delay in seeking leave to amend. McCoy may contend that she believed it was unnecessary to amend the complaint to add strict liability claims against C-Work and T-Mobile USA because she believed her negligence claims encompassed claims for strict liability. This argument is unpersuasive, however, given that McCoy brought both a negligence claim and a separate strict liability claim under section 402A against Apple, demonstrating McCoy's awareness that strict liability and negligence are distinct causes of action that must be separately pleaded. Moreover, there is no plausible explanation for McCoy's delay in seeking to add breach of warranty claims that plainly were not included in the complaint. Despite notice of the facts underlying these claims, McCoy failed to take advantage of earlier opportunities to amend.

McCoy's delay in seeking leave to amend is undue because amendment at this late stage in the litigation would place an unwarranted burden on the Court and McCoy lacks a reasonable explanation for the delay despite having previous opportunities to amend. I will deny McCoy's motion for leave to amend because of undue delay.

**IV. CONCLUSION**

For the above reasons, I will deny McCoy's motion.

___s/ANITA B. BRODY, J.__<br>ANITA B. BRODY, J.